Receipt number AUSFCC-8488550

### IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### (BID PROTEST)

| | |
|---|---|
| NATIONAL INDUSTRIES FOR THE BLIND, ) | |
| ) | |
| *and* ) | |
| ) | |
| ASSOCIATION FOR VISION ) | |
| REHABILITATION AND EMPLOYMENT, INC., ) | |
| ) | |
| *and* ) | |
| ) | |
| NATIONAL ASSOCIATION FOR THE ) | |
| EMPLOYMENT OF PEOPLE WHO ARE BLIND, ) | |
| ) | |
| *Plaintiffs,* ) | Case No._____ |
| ) | **23-145 C** |
| *v.* ) | Judge _____ |
| ) | |
| THE UNITED STATES, ) | |
| ) | |
| *Defendant,* ) | |
| ) | |

### COMPLAINT

National Industries for the Blind ("NIB"), Association for Vision Rehabilitation and Employment, Inc. ("AVRE"), and National Association for Employment of People Who Are Blind ("NAEPB") respectfully bring this action against the Defendant United States of America, acting through the United States General Services Administration ("GSA" or the "Agency"), and allege the following:

### NATURE OF THE CASE

1.     In 1938, Congress established what is now known as the AbilityOne Program, which creates employment opportunities for individuals who are blind or have significant disabilities through the provision of high quality, mission-essential products and services to federal agencies.  The AbilityOne Program is now one of the largest sources of employment in the United

States for people who are blind or have significant disabilities, helping approximately 40,000 such individuals find employment each year through AbilityOne nonprofit agencies or "NPAs."

2.      The AbilityOne Program operates pursuant to the provisions of the Javits-Wagner-O'Day Act ("JWOD Act"), which mandates that the Committee for Purchase from People Who Are Blind or Severely Disabled (now known as the "U.S. AbilityOne Commission") publish a "Procurement List" that identifies commodities and services that the Commission has determined are suitable to be furnished to the government by AbilityOne NPAs.

3.      Unlike the preferred status provided through other federal government socioeconomic programs, the JWOD Act further **mandates** that all government agencies procure **all** products and services on the Procurement List from a qualified NPA unless a purchase exception has been issued for a particular product or service.  *See* 41 U.S.C. §§ 8501-8506.

4.      The implementing regulations for the JWOD Act also require government agencies to purchase items on the Procurement List rather than commercial equivalent items that have essentially the same form, fit, and function.  These prohibited items are referred to as Essentially the Same ("ETS") products.

5.      Federal agencies are thus statutorily required to purchase any product on the Procurement List from a qualified NPA unless there is a purchase exception.

6.      On December 13, 2022, GSA released Request for Proposals No. 47QSCC23R0002 ("RFP"), soliciting proposals to operate commercial e-commerce platforms on which government employees can purchase an extensive number of commercial items.

7.      While the RFP requires offerors to demonstrate the ability to ensure that purchases made on the GSA commercial platforms will comply with various procurement laws and regulations, the RFP does not require the same compliance with respect to the mandatory source

requirements of the JWOD Act.  That is, the RFP does not require offerors to block or otherwise prevent the purchase of ETS items.  Instead, the RFP allows offerors to either (i) mark or restrict ETS items on the platform or (ii) "have the ability to identify, highlight and promote AbilityOne products offered by authorized distributors."  In other words, the RFP will allow prohibited ETS items to be listed for sale on the commercial platforms and does not prevent their purchase by federal agencies in violation of the mandatory source requirements of the JWOD Act.

8.     NIB, AVRE, and NAEPB file this bid protest seeking (1) a declaration that GSA's decision to issue Request for Proposals No. 47QSCC23R0002 without requiring offerors to block federal agencies from purchasing all ETS items violates the JWOD Act and is otherwise arbitrary and capricious and not in accordance with law; and (2) an injunction prohibiting GSA from proceeding with the procurement under the current RFP.

## PARTIES

**A.     Plaintiff National Industries for the Blind**

9.     Pursuant to the JWOD Act, NIB is one of the two Central Nonprofit Agencies ("CNAs") that assists the AbilityOne Commission—an independent federal agency—to administer the AbilityOne Program.[1]

10.     NIB is a nonprofit with its principal place of business located at 3000 Potomac Avenue, Alexandria, VA 22305.

11.     NIB distributes federal government orders for products and services on the Procurement List among NPAs employing people who are blind.  41 U.S.C. § 8503(c); 41 C.F.R.

---

[1] The other CNA, SourceAmerica, represents NPAs employing people with significant disabilities.

§ 51-3.1(a); Declaration of Kevin A. Lynch ¶ 2, Feb. 1, 2023 ("Lynch Decl."). NIB represents

these associated NPAs—including AVRE—as part of the AbilityOne Program.

12.     NIB also performs numerous administrative functions for the benefit of its

associated NPAs and the AbilityOne Program. Lynch Decl. ¶ 5. For instance, pursuant to

AbilityOne Commission Policies and NIB's Cooperative Agreement with the AbilityOne

Commission, "NIB assists the AbilityOne Commission in designating commercial products as

essentially the same as Procurement List items and identifying ETS violations to ensure the

mandatory purchase of Procurement List items." *Id.*

13.     "NIB's mission is to enhance the personal and economic independence of people

who are blind, primarily through creating, sustaining, and improving employment." *Id.* ¶ 2.

14.     "NIB and its associated NPAs provide employment for people who are blind largely

by selling products and services through the AbilityOne Program. . . ." NIB has more than 90

associated NPAs, 57 of which participate in the AbilityOne Program. Those NPAs, together with

NIB itself, form the nation's largest employer of people who are blind. *Id.* ¶ 4.

15.     In fiscal year 2022, NIB and its NPAs provided employment to approximately

5,000 people who are blind through the AbilityOne Program, down from about 6,000 in fiscal year

2018. *Id.*

**B.      Plaintiff Association for Vision Rehabilitation and Employment, Inc.**

16.      AVRE is a private, non-profit organization that creates opportunities for success

and independence with people who are blind or visually impaired. Declaration of Kenny Fernald

¶ 2, Feb. 1, 2023 ("Fernald Decl."). AVRE's principal place of business is located at 174 Court

Street, Binghamton, NY 13901.

17.     AVRE is a qualified nonprofit agency participating in the AbilityOne Program and a certified 501(c)(3) organization.  *Id.*  AVRE is an NIB-associated and NIB-represented NPA.

18.     AVRE has a hybrid business model: AVRE's clinical staff provide vision rehabilitation services, and AVRE's business division produces a variety of products as part of the AbilityOne Program, including office and cleaning products.  *Id.*

19.     Over 75% of the direct labor hours in AVRE's Business Division are performed by employees who are blind.  *Id.*

20.     "The revenue AVRE receives as part of its participation in the AbilityOne Program is critical to AVRE's operations, not only to the employment of the people who are blind who work for AVRE, but also for AVRE's vision rehabilitation services.  AVRE invests the revenue it generates from its participation in the AbilityOne Program in AVRE's Vision Rehabilitation department, offsetting the cost of providing essential services to people who are blind."  *Id.*  ¶ 4.

**C.     Plaintiff National Association for the Employment of People Who Are Blind**

21.     NAEPB is a not-for-profit corporation incorporated in the Commonwealth of Pennsylvania, and a certified 501(c)(6) organization.  "NAEPB's mission is to represent and protect the collective interest of its member organizations to enable them to strengthen and maximize opportunities for people who are blind."  Declaration of Jeffrey Mittman ¶¶ 2, 4, Feb. 1, 2023 ("Mittman Decl.").  Its members include AVRE and other NPAs associated with NIB.  *Id.* ¶ 3.

22.     NAEPB's principal place of business is located at 3000 Potomac Avenue, Alexandria, VA 22305.

**D.     Defendant United States of America**

23.     Defendant is the United States of America, acting through GSA.

## JURISDICTION

24.     This Court has jurisdiction over this action under 28 U.S.C. § 1491(b)(1).  AVRE is an interested party because it is an AbilityOne NPA and a qualified mandatory source of certain office and cleaning products under the JWOD Act that will appear on the e-commerce platforms that are at the center of this procurement.  Fernald Decl. ¶ 2.  As a result, AVRE will suffer adverse effects to its direct economic interests as a result of the procurement.  *Id.* ¶ 5 ("Any reduction in revenue from the AbilityOne Program will have adverse effects on our ability to continue employing people who are blind and offering vision rehabilitation services."); *SEKRI, Inc. v. United States* ("*SEKRI II*"), 34 F.4th 1063 (Fed. Cir. 2022) (holding that designated mandatory source in the AbilityOne Program qualified as a prospective bidder for standing purposes under the Tucker Act).

25.     AVRE lost sales during a pilot program testing the e-commerce platform at issue in this procurement and will continue to lose sales as a result of the procurement under the terms of the RFP.  Fernald Decl. ¶¶ 6-7.  Under GSA's current "Proof of Concept" commercial platform contracts (which similarly do not require blocking of ETS items), ETS items for which AVRE is the mandatory source have been purchased from non-mandatory sources by government agencies. *Id.* ¶ 6.  For example, during the fourth quarter of Fiscal Year 2022 (July to September 2022), government buyers executed only three transactions involving items for which AVRE is the mandatory source on the Procurement List.  *Id.*  However, government buyers executed 47 transactions to purchase ETS items for which AVRE offered products on the Procurement List. *Id.*  This diversion of ETS sales to non-qualified providers will continue or worsen if the procurement proceeds.  *Id.* ¶ 8.

26.     NIB and NAEPB represent AVRE, as well as various additional NPAs that have standing to sue in their own right under 28 U.S.C. § 1491(b)(1) as interested parties directly harmed by the RFP.  Lynch Decl. ¶¶ 2, 19-20; Mittman Decl. ¶¶ 3-4.  During the fourth quarter of Fiscal Year 2022, 33 of the 57 NPAs associated with NIB that participate in the AbilityOne Program, including at least 29 NAEPB members, lost sales when government buyers purchased ETS items instead of the mandatory Procurement List products offered by those NPAs.  Lynch Decl. ¶ 17; Mittman Decl. ¶ 9.

27.     As demonstrated by the sales data for the Proof of Concept commercial platforms, the AbilityOne Program, including NIB's associated NPAs and NAEPB's NPA members, will be harmed by the procurement of commercial platforms under the RFP that do not comply with the JWOD Act.  The percentage of purchases under the AbilityOne Program is significantly lower under the Proof of Concept commercial platform contracts as compared to the legacy system, GSA Advantage!, and other GSA controlled contract vehicles.  *See* Lynch Decl. ¶ 16.  Specifically, in the fourth quarter of Fiscal Year 2022, "AbilityOne purchases accounted for [approximately] 2.24% of the total dollar value of sales under GSA Advantage! and 10.8% of the total value of sales under all GSA purchase vehicles (which do not allow purchase of ETS items), whereas AbilityOne purchases are less than 1% of the total value of sales on the [P]roof of [C]oncept commercial platforms."  *Id.* ¶ 17.

28.     In addition, GSA's own sales data provided to NIB reveals that from July to September 2022, government buyers completed at least 2,899 transactions through the Proof of Concept commercial platforms to purchase prohibited ETS items rather than those offered for sale by AbilityOne NPAs.  *Id.* ¶ 18; *see* Ex. A.  During that same period, there were only 281 transactions to purchase products on the mandatory Procurement List offered by AbilityOne NPAs.

*Id.* Among the 33 affected NIB-associated NPAs specifically, there were 2,726 ETS transactions, compared to 254 Procurement List transactions. Among the 29 affected NAEPB member NPAs, there were 2,583 ETS transactions, compared to 241 Procurement List transactions. This means that ETS items were purchased in direct violation of the JWOD Act more than 10 times more often than mandatory Procurement List items during this period. And some of those non-compliant ETS transactions occurred when the platform providers were also the vendor for the product. *See* Ex. A. A list of Procurement List and ETS items that NIB has identified as being sold on the Proof of Concept commercial platforms during that period is attached as Exhibit A.

29.     The NPAs' interests are also directly germane to NIB's purpose as a duly appointed CNA and NAEPB's mission as a trade association. NIB is an AbilityOne Authorized Enterprise and, through its NPAs, is the nation's largest employer of people who are blind. In its role as a CNA, NIB connects NPAs with procurement opportunities with the federal government and commercial companies and helps to monitor compliance with the JWOD Act and AbilityOne Program. *See* Lynch Decl. ¶¶ 2, 5. Similarly, NAEPB "represent[s] and protect[s] the collective interest of its member organizations to enable them to strengthen and maximize opportunities for people who are blind. Mittman Decl." ¶ 4.

30.     Moreover, even though AVRE is participating as a Plaintiff in this protest, the claims asserted in this Complaint do not require the participation of individual NPAs.

31.     Enjoining the government from proceeding under this RFP would reduce violations of the JWOD Act that negatively impact all NPAs that are mandatory sources of products impacted by the subject procurement and GSA's Proof of Concept platforms. *See* Lynch Decl. ¶ 25; Mittman Decl. ¶¶ 8, 10; Fernald Decl. ¶¶ 4-5.

32.     Plaintiffs object to the Agency's decision to issue Request for Proposals No. 47QSCC23R0002 as currently drafted.  The Agency's decision to issue the RFP without requiring offerors to prevent the sale of ETS items to federal government agencies was arbitrary and capricious and not in accordance with law.

33.     Proposals in response to the RFP are due at 10 am on February 3, 2023.  Plaintiffs file this protest prior to that date and time, and the protest is therefore timely.

## BACKGROUND

**A.     GSA Implements a Proof of Concept for the Commercial e-Marketplace Platform Program.**

34.     GSA Advantage! is the government's legacy online electronic shopping and ordering system, awarded and administered by GSA.  It provides federal, state, and local government agencies access to purchase products and services from Federal Supply Schedule contractors.  GSA Advantage! complies with the mandatory source requirements of the JWOD Act and does not permit vendors to post ETS items as available for purchase by government buyers.

35.     In Section 846 of the National Defense Authorization Act for Fiscal Year 2018 (FY2018 NDAA), Pub. L. No. 115-91, 131 Stat. 1283 (2017), Congress instructed GSA to establish a new program to use commercial e-commerce platforms for federal procurement. Although Congress instructed GSA to adhere to commercial practices to the maximum extent practicable, it nevertheless declared that "[a]ll laws, including laws that set forth . . . restrictions for the procurement of property or services by the Federal Government, apply to the program." Those laws include the JWOD Act and its implementing regulations.

36.     On July 2, 2019, GSA published a draft solicitation for its Commercial e-Marketplace Acquisition to implement a "Proof of Concept"—effectively a pilot program—to

enable a subset of federal agencies to procure routine commercial items through partnerships with multiple commercial online portals.

37.     The draft solicitation originally called for "use of mandatory Government sources requirements" and made clear that FAR 8.002 (regarding the AbilityOne Program) and FAR 8.005 (requiring use of AbilityOne sources) were to "apply to all purchases made on the e-commerce marketplace platforms."

38.     The draft solicitation was later amended, however, to remove the requirement to prevent the sale of ETS items, and offerors were merely required to "describe [their] capabilities to appropriately mark AbilityOne items and to promote them."  The solicitation noted that an "important Government objective is an ability to mark or provide notification of restricted ETS items, as well as to prevent the sale of ETS items to Government buyers and to promote the purchase of the AbilityOne item instead," and that "GSA will be tracking the sale of AbilityOne items as a key metric for the program."

39.     On June 26, 2020, GSA announced the award of contracts under the e-commerce marketplace solicitation to Amazon, Fischer Scientific, and Overstock.com to operate commercial marketplaces for GSA as part of the Proof of Concept.

**B.     GSA Releases Draft RFP No. 47QSCC23R0002 for Procurement of Commercial Online Platforms.**

40.     On September 8, 2022, GSA released a draft solicitation ("Draft RFP") to obtain feedback on the proposed requirements for the follow-on commercial platforms program procurement. Consistent with the Proof of Concept, the program was to provide business-to-business ("B2B") online shopping capabilities for federal agency Government Purchase Card holders to purchase routine, commercial items.

41.     The Draft RFP required compliance with certain procurement laws and regulations that apply to purchases made on the commercial platforms and asked offerors to "outline your capabilities related to preventing the sale of products to Government buyers from prohibited vendors on the platform," including FAR Subpart 4.20 (Prohibition on Contracting for Hardware, Software, and Services Developed by Kaspersky Labs); Section 889 of the FY2018 NDAA (prohibiting procurement of covered telecommunications equipment and video surveillance services or equipment from certain entities, such as Huawei Technologies Company); and excluded entities listed on SAM.gov (i.e. suspended or debarred contractors).

42.     The Draft RFP treated AbilityOne products differently.  Rather than simply prohibiting sales of ETS items, the Draft RFP paid lip-service to the AbilityOne mandatory sourcing requirements by stating that "[a]gencies are directed to not buy items that are essentially the same as AbilityOne products unless the products required are not available through the AbilityOne Program" and that the AbilityOne product list "will be provided to the platform providers."  And it required platform providers to "remove listings" for AbilityOne products being offered by unauthorized distributors.

43.     The Draft RFP, however, would allow GSA's commercial platform providers to choose between two options for addressing AbilityOne requirements: (i) marking or restricting ETS items on the platform and/or (ii) "hav[ing] the ability to identify, highlight and promote AbilityOne products offered by authorized distributors."

44.     Platform providers would not be required to demonstrate their capabilities with respect to these minimal ETS requirements at the time of the procurement's Live Test Demonstration, but "within 120 days of award."

## C.   NIB Raised Concerns Regarding the Draft RFP.

45.   NIB, on behalf of its associated NPAs, raised concerns about the failure of the Draft RFP to require compliance with the JWOD Act and AbilityOne Program and the disparate treatment as compared to other mandatory sourcing programs.[2]

46.   "On September 30, 2022, NIB submitted comments on the Draft RFP [through] GSA's web-based form."  Lynch Decl. ¶ 22.  NIB explained that the language in the Statement of Objectives, *supra* ¶ 43, permitting platform providers to either mark ETS items or provide "the ability" to identify, highlight, and promote AbilityOne products, would not prevent federal agencies from, even inadvertently, buying ETS items in direct violation of the JWOD Act.  NIB requested that GSA amend this language to ensure platforms are fully compliant with the JWOD Act, such as by requiring platform providers to offer products listings free of ETS products or blocking the sale of ETS items to federal customers.

47.   Then, on "October 28, 2022, NIB wrote to the GSA Administrator, Robin Carnahan," ("Administrator") to "again express concerns about the provisions of the Draft RFP related to the AbilityOne Program and treatment of ETS items".  Ex. B; Lynch Decl. ¶ 23.

48.   In that correspondence, NIB expressed particular concern that the Draft RFP did not require compliance with the JWOD Act, and, as a result:

> as written, the Draft RFP would inevitably result in federal agencies executing a significant volume of non-compliant purchases through the platforms, perpetuating and exacerbating the reduction in AbilityOne sales since the current commercial platforms were activated and, in turn, reducing the number of jobs supported by the AbilityOne Program.

---

[2] NIB raised similar concerns in an April 14, 2022 letter to the GSA Contracting Officer in response to GSA's Request for Information ("RFI") No. 47QSCC22N0007, which included substantially the same language regarding the AbilityOne Program that was later incorporated into the RFP. Lynch Decl.  ¶ 20.

49.     NIB reminded GSA that the JWOD Act requires federal agencies to purchase AbilityOne products that the AbilityOne Commission has deemed suitable to procure when those products are available in the time required by the procuring agency, and that federal agencies, their ordering offices, and individuals (such as Government Purchase Card holders) are prohibited from buying ETS products.  41 U.S.C. § 8504(a); *see also* FAR 8.703, 8.704(a)(1); 41 CFR §§ 51-5.3(a), 51-6.13(c).

50.     NIB also expressed that the Draft RFP's approach was contrary to GSA's implementation of the JWOD Act and related regulations on other GSA programs, such as the Multiple Award Schedule, GSA's Global Supply Contract, and Fourth Party Logistics contracts for retail sales at military bases, in which AbilityOne compliance is required under the contract. For example, and in contrast to the Draft RFP, the GSA Global Supply program guarantees "Automatic Compliance" with the JWOD.   Recognizing the serious compliance risk, GSA specifically advertises the Global Supply program as "JWOD Guaranteed," promising federal buyers that GSA "do[es] the work to ensure you are FAR, JWOD and environmentally compliant" and that "Federal buyers satisfy their JWOD requirements when they shop GSA Global Supply. We guarantee it."  GSA Global Supply*, About GSA Global Supply,* www.gsaglobalsupply.gsa.gov (last visited Jan. 24, 2023); *see also* Solicitation No. 47QSMD20R0001, Refresh No. 0015 for Multiple Award Schedule, at 8 (Jan. 18, 2023) ("Because AbilityOne products are mandatory purchases for Federal customers, an offeror must not include any ETS items in its FSS proposal."), *available at* SAM.gov.

51.     In its October 2022 letter to the Administrator, NIB also noted that the Proof of Concept confirmed that the new program was not complying with the JWOD Act's mandatory sourcing requirements.  That is, the percentage of purchases under the AbilityOne Program is

significantly lower under the Proof of Concept commercial platforms compared to GSA Advantage! and other GSA controlled contract vehicles over the same time period. Specifically, NIB explained to GSA that based on the then-available data, AbilityOne purchases accounted for 2-4% of the total dollar value of sales under GSA Advantage! and 9-10% of the total value of sales under all GSA purchase vehicles, but AbilityOne purchases were less than 1% of the total value of sales on the Proof of Concept commercial platforms.

52.     As NIB pointed out to GSA, "the same technology that allows platform providers to block [sales of prohibited items and vendors] could and should be applied to ETS items to ensure compliance with the JWOD Act and its implementing regulations" and "despite the platforms' clear capabilities to block the sale of ETS items, the Draft RFP inexplicably fails to require this proven approach to JWOD compliance, virtually ensuring widespread non-compliance among the numerous individual government buyers who will utilize the commercial platforms."

53.     Accordingly, NIB proposed multiple steps that GSA could take to address these concerns, including: expressly requiring compliance with the JWOD Act; requiring offerors to utilize technology to restrict sales of ETS items to ensure compliance with the JWOD Act; or revising the Draft RFP to require platform providers to ensure substitution of AbilityOne products for ETS items.

54.     GSA provided a written response to NIB's letter of concern on December 9, 2022.

55.     GSA acknowledged the "steady decline" in government purchases of traditional NIB items in recent years. GSA also acknowledged that other GSA programs, such as GSA Advantage!, use a "block and sub" requirement for ETS items to ensure compliance with the JWOD Act. However, GSA explained that its commercial platforms program instead "relies on ongoing education, training, and enforcement by agencies" for JWOD Act compliance.

**D.      GSA Issues Request for Proposals No. 47QSCC23R0002.**

56.      On December 13, 2022, GSA issued the final RFP seeking commercial online platforms to provide B2B e-commerce capabilities for federal agencies, referred to as the Commercial Online Platform Acquisition.  The RFP contemplates award of multiple no-cost contracts with commercial platforms providers.  The period of performance would be one year, with four one-year option periods.

57.      The Statement of Objectives in the RFP declares: "The Government seeks commercially available online . . . platform solutions that enable buyer compliance with the Federal purchasing rules and regulations that apply to all purchases made on the Government Purchase Card, while also offering many of the benefits of today's e-commerce experiences."

58.      The RFP contemplates a two-phased evaluation process.  For Phase I, offerors will submit Volume 1 (Contract Data) and Volume 2 (Phase I Technical Proposal) no later than February 3, 2023 at 10 am.  For Phase II, offerors will submit Volume 3 (Phase II Technical Proposal) within fourteen days after notice from the Contracting Officer that the offeror has moved to Phase II of the evaluation.

59.      The final RFP did not make any changes to the Draft RFP with respect to requiring compliance with the mandatory source requirements of the JWOD Act or otherwise address any of the points raised by NIB with respect to the Draft RFP.

60.      The Statement of Objectives and Prospective Offeror Requirements in the RFP would allow platform providers to choose between the same two options mentioned in the Draft RFP for addressing AbilityOne requirements: (i) marking or restricting ETS items on the platform and/or (ii) "hav[ing] the ability to identify, highlight and promote AbilityOne products offered by authorized distributors."

61.     Performance of the program during the Proof of Concept confirms that these options are inadequate to comply with the JWOD Act.  Plaintiffs are significantly prejudiced by GSA's actions in issuing the RFP without requiring offerors to demonstrate the capability to block the sale of ETS items from GSA's commercial platforms.

## COUNT I

**GSA's Issuance of the RFP Violates the JWOD Act and Its Implementing Regulations.**

62.     Plaintiffs incorporate by reference the allegations in each of the preceding and subsequent paragraphs as if set forth herein.

63.     The JWOD Act requires federal agencies to purchase AbilityOne products that the AbilityOne Commission has deemed suitable to procure when those products are available in the time required by the procuring agency.  41 U.S.C. § 8504(a); *see also* FAR 8.703.

64.     Under regulations implementing the requirements of the JWOD Act, federal agencies are prohibited from buying products that are "essentially the same" as a product on the AbilityOne Procurement List.  41 CFR §§ 51-5.3(a), 51-6.13(c).

65.     Section 846 of the FY2018 NDAA emphasized the importance of "***ensur[ing] compliance with laws pertaining to supplier and product screening***."  Pub. L. No. 115-91, § 846(e)(1), 131 Stat. at 1484 (emphasis added).

66.     The RFP, however, fails to require compliance with the JWOD Act and the FY2018 NDAA.  Instead, it effectively renders compliance optional by allowing platform providers to choose between two options for addressing AbilityOne requirements:  (i) marking or restricting ETS items on the platform or (ii) "hav[ing] the ability to identify, highlight and promote AbilityOne products offered by authorized distributors."

67.     Allowing offerors the option to place compliance with the JWOD Act on individual government employees virtually guarantees that federal agencies will purchase ETS items on the

platforms in violation of the JWOD Act and implementing regulations, even inadvertently, as demonstrated during the Proof of Concept.  Based on GSA's 2021 sales data, less than 1% of the Proof of Concept commercial platform sales are for AbilityOne products compared with 10% on GSA's other programs, demonstrating that the operation of the platforms under the terms of the RFP does not comply with the mandatory source requirements of the JWOD Act.

68.     In addition, GSA's most recent sales data for the Proof of Concept commercial platforms shows that, in just three months in 2022, ETS items were purchased on the platforms at least 2,899 times—more than 10 times the number of transactions purchasing Procurement List items for which AbilityOne NPAs were mandatory sources.  In other words, during this period, greater than ninety percent (90%) of the transactions on the Proof of Concept commercial platforms that were required to go to AbilityOne NPAs—including NIB's associated NPAs, NAEPB's members, and AVRE—were instead diverted to commercial vendors of ETS items in violation of the JWOD Act.  Lynch Decl. ¶ 18; Mittman Decl. ¶ 9; Fernald Decl. ¶ 6; Ex. A; Ex. C.

69.     Because the RFP is likely to result in a violation of federal law, it cannot stand. *Goodwill Indus. of S. Fla., Inc. v. United States*, 162 Fed. Cl. 160, 201 (2022) (granting AbilityOne NPA's motion for judgment: "By issuing the competitive solicitation and making an award pursuant to the competitive solicitation without following the required procedures, . . . the defendant failed to comply with the JWOD statutory and implementing regulatory requirements.").

## COUNT II

**GSA's Issuance of the RFP Is Arbitrary and Capricious Because GSA Failed to Adequately Consider the Impact of the RFP Terms on the AbilityOne Program.**

70.     Plaintiffs incorporate by reference the allegations in each of the preceding and subsequent paragraphs as if set forth herein.

71.     The RFP is also arbitrary and capricious.  Foremost, GSA failed to adequately consider the impact of its decision not to require the commercial platform providers to block all ETS on the AbilityOne Program and on the individuals working for AbilityOne NPAs who are blind and significantly disabled.

72.     The JWOD Act ensures that federal agencies purchase items from the AbilityOne Program by making those items mandatory for all procurements.  This mandatory source requirement ensures adequate support for the AbilityOne NPAs, which in turn supports the employment of individuals who are blind and significantly disabled.

73.     The expansive nature of the AbilityOne Program makes it critical for GSA to implement appropriate risk management and compliance safeguards to ensure compliance with the JWOD Act.  Indeed, the AbilityOne Commission has identified over 33,000 designated commercial equivalent part numbers to products on the Procurement List.  It is simply infeasible for individual government buyers to not only identify and track all of those items for every purchase they make, but also identify when items being offered for purchase on the commercial platforms are essentially the same as an item on the Procurement list.  Instead, it is almost certain that government buyers will assume that purchasing items offered for sale on GSA's own platforms will not violate the JWOD Act.  Indeed, the RFP's Statement of Objectives states that GSA is seeking platforms "that enable buyer compliance with the Federal purchasing rules and regulations that apply to all purchases made on the Government Purchase Card."

74.     Recognizing these logistical compliance and risk management complications, the AbilityOne Commission requires all AbilityOne authorized distributors to block the purchase of ETS items and substitute AbilityOne products, removing that responsibility from government buyers.  And GSA imposes the same obligation on its other buying platforms such as GSA

Advantage!.  Given the enormous volume of purchases anticipated on the GSA commercial platforms, it is similarly incumbent on GSA to ensure that all sales comply with federal law.

75.     Indeed, the RFP implements blocking technology with respect to other procurement laws, such as FAR Subpart 4.20 (Prohibition on Contracting for Hardware, Software, and Services Developed by Kaspersky Labs); Section 889 of the FY2018 NDAA (prohibiting procurement of covered telecommunications and video surveillance services or equipment from certain entities, such as Huawei Technologies Company); and excluded entities listed on SAM.gov (i.e. suspended or debarred contractors).

76.     Because the RFP will inevitably result in federal agencies continuing to execute a significant volume of non-compliant purchases through the platforms, it will ensure violation of the JWOD Act and exacerbate the reduction in AbilityOne sales that NPAs have experienced since the start of GSA's Proof of Concept contracts, which will in turn result in the loss of critical jobs for people who are blind or significantly disabled supported by the AbilityOne Program.

77.     GSA did not adequately consider or address the risk of violations of the JWOD Act and the effect on AbilityOne NPAs and those employed by the NPAs who are blind and significantly disabled.  As part of the market research leading up to the procurement of the commercial platforms, the FY2018 NDAA specifically required GSA to make "[a]n assessment of the products or product categories that are suitable for purchase on the commercial e-commerce portals," as well as "[a]n assessment of the impact on existing programs, including schedules, set-asides for small business concerns, and other preference programs."  Pub. L. No. 115-91, § 846(c)(2)(C), (F), 131 Stat. at 1484.

78.     While acknowledging "that there has been a steady decline over the years in Government purchases of traditional NIB items, such as office supplies and restroom products,"

GSA stated to NIB that it "*believes* the overall drop in demand is not caused by GSA's commercial platforms program or an alleged lack of enforcement of other AbilityOne rules." (emphasis added) GSA, however, has conducted no assessment or other analysis to evaluate the contribution of the GSA commercial platforms on the dramatic fall in purchases made from AbilityOne NPAs. Nor has it offered any explanation for the fact that the percentage of purchases under the AbilityOne Program is significantly lower under the Proof of Concept commercial platforms compared to GSA Advantage! and other GSA controlled contract vehicles. Indeed, the volume of ETS transactions identified by NIB in the fourth quarter of Fiscal Year 2022 on the Proof of Concept platforms (2,899) compared to the minimal number of AbilityOne transactions (281) demonstrates rampant non-compliance with the JWOD Act.

79.     The livelihoods of people who are blind in this country is reliant on proper implementation and enforcement of the JWOD Act. By failing to adequately investigate and consider the impact of the commercial platform procurement on this population, GSA has acted in an arbitrary and capricious manner.

## COUNT III

**GSA's Issuance of the RFP Is Arbitrary and Capricious Because It Fails to Treat Compliance with the JWOD Act Similarly to Compliance with Other Procurement Laws.**

80.     Plaintiffs incorporate by reference the allegations in each of the preceding and subsequent paragraphs as if set forth herein.

81.     The RFP is also arbitrary and capricious because it treats the JWOD Act differently than other mandatory purchase restrictions.

82.     The RFP reflects that the Agency considered the risk that the proposed commercial online platforms might result in noncompliance with certain procurement laws and regulations and ways to mitigate that risk. For example, the RFP's "RISK MANAGEMENT AND

COMPLIANCE" section requires offerors to prevent the sale of prohibited products to government buyers, such as hardware and software developed or provided by Kaspersky Labs, covered telecommunications and video surveillance services and equipment in accordance with Section 889 of the Fiscal Year 2019 National Defense Authorization Act, and products offered by entities that are suspended or debarred from government contracting.   RFP, Attach. 2, Statement of Objectives § 4(B)(i).

83.   The "RISK MANAGEMENT AND COMPLIANCE" section does not, however, require that the platforms similarly block the sale of ETS items, even though the purchase of such items is prohibited by the JWOD Act.   Instead, the RFP allows offerors to meet the risk management requirement by showing that they can either block ETS or that they "have the ability to identify, highlight, and promote AbilityOne products that are offered by authorized distributors."   *Id.* § 4(B)(iv)(2).

84.   Further undermining the mandatory status of the AbilityOne Program, platform providers are not even required to demonstrate their capabilities with respect to these minimal ETS requirements at the time of the Live Test Demonstration, but "within 120 days of award."

85.   The same technology that allows platform providers to block sales of Kaspersky products, covered telecommunications and video surveillance equipment, and products offered by vendors on the excluded parties list could and should be applied to ETS items to ensure compliance with the JWOD Act and its implementing regulations.   Yet despite the platforms' clear capabilities to block ETS products and substitute mandatory AbilityOne products, the RFP inexplicably fails to require this proven approach to JWOD Act compliance, virtually ensuring widespread non-compliance among the numerous individual government buyers who will utilize the commercial platforms.

86.     By treating the JWOD Act's prohibition on purchasing ETS products as different from other prohibited categories of products, the RFP violates the core principle of administrative law requiring that "[t]he treatment of cases A and B, where the two cases are functionally indistinguishable, must be consistent." *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1260 (D.C. Cir. 1996).

87.     Likewise, the RFP's treatment of ETS items is also contrary to GSA's implementation of the JWOD Act and related regulations for other GSA programs, under which GSA requires compliance with the AbilityOne mandatory source requirements as a term of the contract.  By arbitrarily applying different standards for compliance with the JWOD Act depending on the buying vehicle—even though the statute and regulations apply to all government purchases—the RFP undermines the core purpose of the AbilityOne Program, which relies on the JWOD Act's mandate to purchase Procurement List items from AbilityOne NPAs rather than ETS items to ensure high compliance rates and create sufficient demand for NPA products to support sustainable employment of individuals who are blind and significantly disabled by the NPAs.

88.     As a result of GSA's failure to place the mandatory source requirements of the JWOD Act on equal footing with other mandatory procurement laws, and the failure to apply its own standards for compliance with the JWOD Act on the commercial platforms, GSA's actions in issuing the RFP were arbitrary and capricious.

89.     Plaintiffs are significantly prejudiced by GSA's actions in issuing the RFP without requiring offerors to block the sale of ETS items from GSA's commercial platforms.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

a.   Declare that the Agency's decision to issue Request for Proposals No. 47QSCC23R0002 without requiring offerors to demonstrate the ability to block the sale of all ETS items was arbitrary and capricious and not in accordance with law;

b.   Enjoin the Agency from proceeding with awarding contracts under Request for Proposals No. 47QSCC23R0002 without revising the Request for Proposals to require that offerors demonstrate the ability to block the sale of all ETS items; and

c.   Grant such other relief as may be just and appropriate.

Respectfully submitted,

s/ Tracye Winfrey Howard
Tracye Winfrey Howard, Attorney of Record
WILEY REIN LLP
2050 M Street, NW
Washington, DC  20036
twhoward@wiley.law
Tel.: (202) 719-7452
Fax: (202) 719-7049

*Counsel of Record for National Industries of the Blind, Association for Vision Rehabilitation and Employment, Inc., and National Association for Employment of People Who Are Blind*

*Of Counsel*:
Stephen J. Obermeier
Wesley E. Weeks
Teresita A. Regelbrugge
WILEY REIN LLP

Dated: February 2, 2023