# EXHIBIT B

Tracye Winfrey Howard
202.719.7452
twhoward@wiley.law

**wiley**

Wiley Rein LLP
2050 M St NW
Washington, DC 20036
Tel: 202.719.7000

wiley.law

October 28, 2022

Robin Carnahan
Administrator
General Services Administration
1800 F Street, NW
Washington, DC 20405
robin.carnahan@gsa.gov

Re:   AbilityOne Compliance Issues in the Commercial Online Platform Acquisition

Dear Administrator Carnahan:

We write on behalf of National Industries for the Blind (NIB) regarding Draft Request for Proposals (RFP) No. 47QSCC22R0028 for the Commercial Online Platform Acquisition.[1] NIB has significant concerns regarding the provisions in the Draft RFP related to the AbilityOne Program, specifically its treatment of products that are "essentially the same" (ETS) as those on the AbilityOne Procurement List. Refusal to address these concerns will directly result in the loss of employment for people who are blind in the United States.

NIB's mission is to enhance the personal and economic independence of people who are blind, primarily through creating, sustaining, and improving employment. NIB is a Central Nonprofit Agency (CNA) designated by the U.S. AbilityOne Commission (AbilityOne Commission) to distribute federal government orders for products and services on the federal Procurement List among qualified nonprofit agencies (NPAs) for the blind under the Javits-Wagner-O'Day Act, 41 U.S.C. §§ 8501-8506 (JWOD Act).

As you know, the JWOD Act requires federal agencies to purchase AbilityOne products that the AbilityOne Commission has deemed suitable to procure when those products are available in the time required by the procuring agency. 41 U.S.C. § 8504(a); *see also* FAR 8.703. In addition, federal agencies are prohibited from buying products that are "essentially the same" as a product on the AbilityOne Procurement List. 41 CFR §§ 51-5.3(a), 51-6.13(c).

Despite these clear statutory and regulatory requirements, the Statement of Objectives and Prospective Offeror Requirements in the Draft RFP would allow platform providers to choose between two options for addressing AbilityOne requirements: marking or restricting ETS items on the platform and/or "having the ability" to identify, highlight and promote AbilityOne products offered by authorized distributors. But merely marking ETS items or promoting AbilityOne items will not prevent federal agencies from even inadvertently buying ETS items in direct violation of the JWOD Act. Thus, as written, the Draft RFP would inevitably result in federal agencies executing a significant volume of non-compliant purchases through the platforms, perpetuating

---

[1] This letter and all attachments contain confidential and proprietary business information belonging to NIB and are therefore exempt from public disclosure under 5 U.S.C. §§ 552(b)(4).

October 28, 2022
Page 2

and exacerbating the reduction in AbilityOne sales since the current commercial platforms were activated and, in turn, reducing the number of jobs supported by the AbilityOne Program.

It is notable that the Draft RFP requires compliance with some laws and regulations, but not the JWOD Act.  The Draft RFP's shortcomings with respect to JWOD Act compliance are highlighted by the stark contrast between the treatment of ETS items compared to other provisions in the Risk Management and Compliance section of the Statement of Objectives.  Rather than allowing platform providers simply to "have the ability" to identify, highlight, and promote alternatives to other prohibited products,[2] the Draft RFP requires them to prevent the sale of prohibited products to government buyers, such as hardware and software developed or provided by Kaspersky Labs, covered telecommunications and video surveillance services and equipment in accordance with Section 889 of the Fiscal Year 2019 National Defense Authorization Act, and products and services provided by entities listed as excluded parties on SAM.gov.

The same technology that allows platform providers to block those sales could and should be applied to ETS items to ensure compliance with the JWOD Act and its implementing regulations.  To do otherwise risks inadvertently misleading government buyers that non-compliant ETS purchases are, in fact, compliant with the JWOD Act because they are not blocked by the platform providers like other prohibited purchases.  Indeed, despite the platforms' clear capabilities to block ETS products and substitute mandatory AbilityOne products, the Draft RFP inexplicably fails to require this proven approach to JWOD compliance, virtually ensuring widespread non-compliance among the numerous individual government buyers who will utilize the commercial platforms.

The AbilityOne Commission has identified over 32,000 designated commercial equivalent items to products and services on the Procurement List.  Expecting individual government buyers to identify and track all of those items for every purchase they make is not realistic.  This is exactly why the AbilityOne Commission requires all AbilityOne authorized distributors to have a system in place for eCommerce sites to block the purchase of ETS items and substitute AbilityOne products—to remove that responsibility from government buyers.  Given the volume and rapidity of purchases on online platforms, it is incumbent on GSA to ensure that all sales comply with federal law.  Neither NIB nor NPAs have the ability to monitor sales on these platforms—nor do they have the legal obligation to do so.  *See SEKRI, Inc. v. United States*, 34 F.4th 1063, 1072-73 (Fed. Cir. 2022) ("But it would not make sense to impose upon mandatory sources an affirmative obligation to monitor the federal government's solicitations to identify attempts to circumvent the AbilityOne Program and immediately bring agency protests, especially where the JWOD Act places an affirmative obligation on procuring agencies to determine whether the procurement is subject to a mandatory source.").

The Draft RFP's approach is also contrary to GSA's implementation of the JWOD Act and related regulations on other GSA programs (e.g., MAS product schedule, Global Supply Contract, Fourth Party Logistics contracts for retail sales at military bases) in which AbilityOne compliance is required under the contract.  Again, creating different standards for compliance with the JWOD Act depending on the buying vehicle—even though the statute and regulations apply to all government purchases—creates the potential for confusion among government buyers and

---

[2] Further undermining the mandatory status of the AbilityOne Program, platform providers are not even required to demonstrate their capabilities with respect to these minimal ETS requirements at the time of the Live Test Demonstration, but "within 120 days of award."

wiley.law

October 28, 2022
Page 3

undermines the goals of the AbilityOne program, which rely on the fact that AbilityOne purchases are mandatory to ensure high compliance rates.

NIB's concerns are validated by the data available from GSA's current commercial platform pilot. The percentage of purchases under the AbilityOne Program is significantly lower under the current commercial platforms compared to GSA Advantage and other GSA controlled contract vehicles. Specifically, AbilityOne purchases account for 2-4% of the total dollar value of sales under GSA Advantage and 9-10% of the total value of sales under all GSA purchase vehicles, but AbilityOne purchases are less than 1% of the total value of sales on the current commercial platforms. This loss of sales is compounded by an increase in sales of ETS items. NIB estimates that less than 1% of the value of sales through GSA controlled contracts (e.g., GSA Advantage, GSA Global Supply and GSA eBuy) result in non-compliant purchases of ETS products rather than the mandatory AbilityOne products, i.e. lost sales for AbilityOne NPAs. Under the current commercial platforms, however, NIB estimates the percentage of non-compliant sales in direct violation of the JWOD Act is at least an order of magnitude higher at approximately 12% of the total dollar value of sales on the platforms.

If the Draft RFP is not revised to require platform providers to ensure substitution of AbilityOne products for ETS items, these lost revenues will only increase as buyers migrate from GSA contract vehicles, which have ETS compliance programs in place, to the commercial platforms, which do not. The result will invariably be the loss of employment opportunities for people who are blind. Sales of AbilityOne products generate employment for employees of AbilityOne NPAs. Sales of ETS products instead of the corresponding mandatory AbilityOne products extinguish employment for an AbilityOne NPA, depriving individuals of gainful employment that allows them to contribute to the economy rather than exclusively relying on government assistance.

Finally, GSA's updates to Congress on the implementation of the commercial platform pilot have not discussed the impact on the AbilityOne Program. We request that future updates include this information so that Congress understands the detrimental effect of transferring sole responsibility for compliance with mandatory AbilityOne purchasing requirements to individual government buyers.

NIB has been trying to work with GSA on this critical issue since the inception of the commercial platform initiative. We understood at that time that GSA was implementing a proof of concept, and we were hopeful that GSA would acknowledge and address our concerns, particularly once it saw the impact on the AbilityOne Program during the initial phase of the initiative. That has, unfortunately, not happened, and GSA is now doubling down on its failed AbilityOne strategy. Accordingly, we are now escalating our concerns to you for further review. Although we prefer to resolve this issue informally with GSA, we are also continuing to evaluate other avenues to address our concerns.

Thank you in advance for your attention to this matter. The livelihood of people who are blind in this country is reliant on proper implementation and enforcement of the JWOD Act. Please do not hesitate to contact the undersigned with any questions.

October 28, 2022
Page 4

Sincerely,

*Tracye Howard*

Tracye Winfrey Howard
Stephen J. Obermeier
Wesley E. Weeks
*Counsel for National Industries for the Blind*


cc:   Thomas R. Mikrut
      General Counsel, National Industries for the Blind

      Maria C. Swaby
      Procurement Ombudsman, General Services Administration

      Jeffrey Lau
      Regional Commissioner, Federal Acquisition Service